IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIAN AND AMANDA BURKE, H/W,** as assignees of Joseph Oliver Construction, LLC<br><br>and<br><br>**JOSEPH OLIVER CONSTRUCTION, LLC**<br><br>Plaintiffs,<br><br>v.<br><br>**UTICA FIRST INSURANCE COMPANY**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 22-4093** |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                                      **April 18, 2023**

This matter involves an insurance dispute following errors in construction that resulted in a mold infestation in a family home. It arises from an underlying action between the Plaintiffs. The sole issue is one of insurance contract interpretation.

**I.      SUMMARY OF FACTS**

**A.      The Insurance Policy**

This dispute focuses on a contractor's insurance policy ("the Policy") held by Plaintiff Joseph Oliver Construction, LLC ("Joseph Oliver") and carried by Defendant Utica First Insurance Company ("Utica First"). Compl. (ECF 1) ¶¶ 16-19. The Policy covers general liability, personal and advertising injury, medical payments, and property damage, subject to certain exclusions. Id.

The Policy includes several exceptions at the start of the document – only two are at issue here. The first is titled "Virus or Bacteria Exclusion." It states, in relevant part:

1

> The following provisions are added with respect to all property coverages provided in this policy. All other "terms" of the policy apply, except as amended by this endorsement.
> 1. When "fungus or related perils" is a defined "term," that definition is deleted and replaced by the following, but only with respect to the Property Coverages provided by this policy.
> [. . .]
> 2. The following exclusion is added under Perils Excluded. It applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.
> **Virus or Bacteria** – "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that caused disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
> This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
>     a. Any contamination by any virus, bacterium, or other microorganism
> [. . .]
> 3. The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
> 4. The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

Policy ECF 1-1 at 90 (emphasis original).

A second exclusion, titled "Exclusion – Wet Rot, Dry Rot, Bacteria, Fungi, or Protists Contracting Operations" ("the Fungi Exclusion") contains a similar exclusion for bodily injury resulting from mold exposure:

> The Commercial Liability Coverage is amended as follows:
> The following exclusions are added:
> 1. "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of "your work" and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:
>     a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

2

      b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.
2. "We" do not pay for actual or alleged "bodily injury" or "property damage" included in the "products/completed work hazard" and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:
   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.
3. "We" do not pay for actual or alleged "bodily injury" or "property damage" liability assumed by an "insured" under a contract or agreement and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:
   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

Policy ECF 1-1 at 91. The Policy contains a number of other exclusions; most of these exclusions indicate which section of the Policy they apply to. For example, the Silica Exclusion specifically amends the Commercial Liability Coverage. Policy, ECF 1-1 at 85. The "Exclusion – War and Military Action" similarly amends the Commercial Liability Coverage. Id. at 86. The "Certified Terrorism Loss" section amends the Contractors Special Policy. Id. at 94. The "Exclusion – Water Damage" is limited to the Property Coverages Section of the policy. Id. at 110. The Policy then indicates what coverage it provides, including "Commercial Liability Coverage" and "Property Coverage." Id. at 121-22.

    **B.**    **The Plaintiffs' Dispute**

The facts as alleged in the Complaint are as follows. Plaintiffs Brian and Amanda Burke ("the Burkes") hired Joseph Oliver to perform construction work at the Burkes' home. Compl.

¶ 10. Joseph Oliver's work was insured under the terms of the Policy with Utica First. Id. ¶¶ 16-19. The Burkes allege that the construction was done negligently, resulting in water intrusion, mold contamination, and structural damage. Id. The alleged negligence resulted in both property damage and serious personal injuries, namely that Mr. Burke developed nodular sclerosis Hodgkin lymphoma and chronic myeloid leukemia. Id. ¶ 11.

### C. The Plaintiffs' Arbitration and Subsequent Payment Dispute

The Burkes and Joseph Oliver entered into an arbitration agreement and submitted the underlying action to binding arbitration. Id. It does not appear, based on the allegations made in the Complaint and the statements of fact included in the briefings, that Utica First was party to the arbitration. Resp. (ECF 7) ¶ 2 (stating that the award was entered "in favor of the Burkes and against Joseph Oliver" but not mentioning Utica First); Resp. at 1-2 (stating that "the Burkes commenced an action against Joseph Oliver" in state court that was then sent to arbitration, but not indicating that Utica First was subject to that arbitration). Rather, as alleged in the Complaint, Utica First agreed to provide Joseph Oliver with a defense in the arbitration. Compl. ¶ 23. At the same time, Utica First refused to provide Joseph Oliver coverage for potential damages resulting from Mr. Burke's personal injuries. Id. ¶ 24. The arbitrator entered an award in favor of the Burkes for $41,237.70 for property damages and $3,000,000.00 for personal injuries; the latter was lowered to $583,762.21 due to a high-low agreement. Id. ¶¶ 13, 15.

Utica First covered the $41,237.70 in property damage that was awarded to the Burkes in their arbitration against Joseph Oliver, and it paid the Burkes that amount on October 4, 2022. Id. ¶ 14. However, neither Utica First nor Joseph Oliver has made payment on the $583,762.21 in personal injury damages that are due to the Burkes, despite the Burkes' demand that Utica First cover the personal injury damages in addition to the property damages on Joseph Oliver's behalf.

Id. ¶¶ 15, 26. Following the arbitration, Joseph Oliver assigned all its rights and interest in and to the insurance policy to the Burkes. Id. ¶ 27.

The Burkes allege that the personal injury damages should be covered under the Policy, specifically alleging that, while the Fungi Exclusion appears to eliminate coverage for bodily injuries resulting from mold exposure, the Virus or Bacterial Exclusion supersedes the Fungi Exclusion and allows for coverage of bodily injuries that result from or relate to any microorganism that causes disease or illness. Id. ¶¶ 18-19, 22.

The Burkes bring one claim of Declaratory Judgment on whether the Policy covers personal injuries resulting from mold contamination (id. ¶¶ 28-34) and request this Court issue an order requiring Utica First to pay the sum of $583,762.21 (id. at 7). The Burkes' claim does not appear to be brought as an appeal of the arbitration award, although the claim could be interpreted to be an attempt by the Burkes to enforce the arbitration award. See id. ¶ 34 ("Plaintiffs request that the Court . . . order that Utica First pay the Arbitration Award [.]").

## II.    SUMMARY OF BRIEFING

### A.    Utica First's Motion to Dismiss

Utica First moves to dismiss the Complaint, arguing that coverage of bodily injury or illness caused by mold is excluded from the Policy's coverage. Mot. (ECF 5). Utica First argues that the Fungi Exclusion excludes coverage for "bodily injuries" arising out of Joseph Oliver's work that were caused by exposure to mold. Id. at 11. It points out that the personal injury damages awarded by the arbitrator are separate from the property damages that were awarded and have already been paid. Id. at 11-12. Utica First argues that the Fungi Exclusion and the Virus or Bacteria Exclusion should be read separately, and applying to separate sections of the Policy, rather than as one superseding the other. Id. at 12. Utica First argues that the language found in

Section 4 of the Virus or Bacteria Exclusion precludes the exclusion from being read as superseding the Fungi Exclusion. Id. at 14.

  **B.**  **The Burkes' Response**

The Burkes respond, first arguing that their claim is ripe. Resp. (ECF 7) at 5-6. They also argue that the Policy is ambiguous and should therefore be interpreted in favor of the Burkes. Id. at 6-7, 13. They argue that there is ambiguity as to whether the Virus or Bacteria Exclusion supersedes the Fungi Exclusion. Id. at 7-8. They argue that if the Virus or Bacteria Exclusion supersedes the Fungi Exclusion, then coverage for Mr. Burke's personal injuries is not excluded because the Virus or Bacteria Exclusion only applies to "property coverage." Id. at 8. The Burkes argue that this interpretation is reasonable because Utica First had already provided coverage for property damage under the Commercial General Liability section, where "property coverage" is lowercased, whereas "Property Coverage" uppercased refers to the Property Coverage section separately. Id. at 9-10. The Burkes argue that this distinction between "property coverage," generally, and "Property Coverage," specifically, opens the Policy to the interpretation that the Fungi Exclusion applies only to the Commercial General Liability section (including the property coverage available under that section), whereas the Virus or Bacteria Exclusion applies to, and supersedes, all similar exclusions to all sections that include property coverage, including the Property Coverage section and the Commercial General Liability section. Id. at 10. This interpretation would create ambiguity as to whether the Fungi Exclusion has been superseded, and so, the Burkes argue, the Motion to Dismiss should be denied. Id. at 11-12.

  **C.**  **Utica First's Reply**

Utica First replies, arguing that the Burkes' reading of the Policy is not reasonable, and that misinterpretation of a contract does not create ambiguity. Reply (ECF 8) at 1-2, 10-11. It

argues that the Fungi Exclusion applies to the Commercial Liability Coverage section for third party claims against Joseph Oliver, whereas the Virus or Bacteria Exclusion applies to the Property Coverage section, namely first party claims by Joseph Oliver for damage to its own property. Id. at 3. Utica First points to several textual cues that would support this interpretation. Id. at 4-5. Utica First argues that the Burkes' interpretation ignores the plain language of Section 4 of the Virus or Bacteria Exclusion. Id. at 5-6. It also argues that the capitalization of the term "property coverage" does not create ambiguity. Id. at 6-9.

### III.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555). While a court must assume for purposes of a motion to dismiss that the plaintiff can prove the facts alleged in the complaint, "it is not . . . proper to assume that [they] can prove faces that [they have] not alleged[.]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983).

### IV.    ANALYSIS

Under Pennsylvania law, a court must construe the language of an insurance policy "in its plain and ordinary sense," and where "the language of an insurance policy is plain and unambiguous, a court is bound by that language." Pennsylvania Nat. Mut. Cas. Ins. Co. v. St.

John, 106 A.3d 1, 23 (Pa. 2014).  If a clause is ambiguous, the policy is to be construed in favor of the insured.  Id. at 23-24.  "Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning."  Id. at 24.  "Coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured," and similarly, exclusions are "interpreted narrowly against the insurer."  Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002).

At the same time, courts should not "torture" the language of a contract in order to create ambiguity.  USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006).  "[T]he language of the policy must be construed in its plain and ordinary sense, and the policy must be ready in its entirety."  Pennsylvania Nat. Mut., 106 A.3d at 24.

The Burkes argue that the Virus or Bacteria Exclusion, on one hand, applies broadly to all sections of the policy that provide any level of property coverage, including the Commercial Liability section, but, at the same time, only re-excludes loss relating to property coverage and none of the other coverages available.  That is, the Burkes argue that the Virus or Bacteria Exclusion broadly wipes away all similar exclusions applying to all claims found in all sections of the Policy only to re-exclude solely losses that could be claimed under property coverage but leaving all other coverage (such as commercial liability or third-party claim coverage) available.  The Burkes' argument begs a single question: if the Virus or Bacteria Exclusion's "superseding" language applies broadly to all sections of the Policy that provide "property coverage," regardless of whether that section provides other coverage, then why does the "exclusion" language in the Virus and Bacteria Exclusion not also apply to all coverage of all sections of the Policy that provide "property coverage"?

There are, fundamentally, two possibilities: either "property coverage" as referenced at the beginning of the Virus or Bacteria Exclusion is to be interpreted narrowly as only applying to the Property Coverage section, or it is to be interpreted broadly enough to apply to all sections of the Policy, and therefore all exclusions to all other sections of the Policy, including the Commercial Liability Coverage.

If the Virus and Bacteria Exclusion is interpreted narrowly as only applying to the Property Coverage section, then it cannot be read as superseding an exclusion to the Commercial Liability Coverage. The only coverage and associated exclusions the Virus or Bacteria Exclusion could apply to is the Property Coverage section and the Property Coverage section's exclusions. The Virus or Bacteria Exclusion would therefore not supersede the Fungi Exclusion, which applies to the Commercial Liability Coverage. Both exclusions would exclude coverage of disease caused by microorganisms, or bodily injury resulting from exposure to mold – the Virus or Bacterial Exclusion would exclude such coverage from the Property Coverage section, and the Fungi Exclusion would exclude such coverage from the Commercial Liability section.

On the other hand, if "property coverage" is interpreted broadly so as to apply the Virus or Bacteria Exclusion to the entire Policy, that exclusion may supersede the Fungi Exclusion. However, it would also apply to all coverage available under those sections. As such, Section 2 of the Virus or Bacterial Exclusion (which states that it applies to "all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements" and does not limit itself to "property coverage," capitalized or otherwise) would apply broadly. Section 2 adds the following exclusion:

> "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

9

If "property coverage" is interpreted broadly to apply to all coverage sections, then the exclusion contained in Section 2 of the Virus or Bacteria Exclusion would also apply broadly to all coverages, thereby excluding coverage of the personal injury damages even as it supersedes the language found in the Fungi Exclusion.

This Court does not need to rule on which interpretation of the phrase "property coverage" is more reasonable where both interpretations would have the same outcome. There is no ambiguity where the outcome of both interpretations is the same.

There is a further logical disconnect in the Burkes' argument: both exclusions exclude coverage for bodily injuries or illnesses resulting from mold, or other microorganisms. That two negatives make a positive is a rule found in math textbooks, not legal doctrines. Reading the exclusions as the Burkes encourage would result in the Fungi Exclusion having no meaning, and the Virus or Bacteria Exclusion to have a meaning that neither exclusion intended.

Finally, Section 4 of the Virus or Bacteria Exclusion appears to put any further question to rest. Section 4 of the Virus or Bacteria Exclusion states:

> The terms of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

Policy, ECF 1-1 at 90. The Burkes attempt to do just that – construe the Virus or Bacteria Exclusion to provide coverage for bodily injury resulting from mold and disease caused by a microorganism that would otherwise be excluded under both exclusions.

The language of the Policy is clear: Mr. Burke's personal injury damages from his disease caused by exposure to mold is excluded under at least one exclusion contained within the Policy.

V.     **CONCLUSION**

For the foregoing reasons, Utica First's Motion to Dismiss shall be **GRANTED**. The Policy at issue does not cover damages resulting from disease caused by microorganisms or bodily injuries caused by exposure to mold.

An appropriate Order follows.